## BOSTICK v. AMMONS.

1. AGRICULTURAL LIEN—CHATTEL MORTGAGE.—If items of debt be secured by an agricultural lien and a chattel mortgage as collateral thereto, the latter secures any part of the amount not legally included in the lien as well as that portion properly secured thereby.
2. SUBROGATION.—Doctrine of subrogation cannot apply where a party advances money for rent and charges it to rentee.

Before WATTS, J., Florence, March, 1901. Affirmed.

Action by P. I. Bostick, as survivor of P. I. Bostick & Co., against B. T. Ammons. From Circuit decree reversing judgment of magistrate, defendant appeals on the following exceptions:

"1st. His Honor having held that the testimony was undisputed and that only a legal question is involved, and also held that the undisputed testimony does show that a considerable amount is due under the bill of sale, expresses a legal conclusion, which this Court has a right to review, and which conclusion appellant asks be reviewed.

"2d. His Honor having stated that the facts were undisputed and only a legal question is involved, fails to overrule the magistrate as to the fact, but does overrule him as to the application of the law to those facts, and in so doing errs.

"3d. His Honor having stated that the facts were undisputed and only a legal question is involved, erred in his construction of the testimony and his application of the lien law, in holding that there was anything due under the bill of sale.

"4th. His Honor, by holding that there was considerable due under the bill of sale, construes the same as a mortgage, representing some debt and not as an outright sale, and should have held that the same was collateral to an agricultural lien, which having been paid in full, the collateral was without legal effect.

"5th. His Honor having held that the facts were undisputed and only a legal question is involved, erred in his con-

struction of the evidence and the application of the law to the evidence, in holding that a considerable amount was due under the bill of sale. That in such construction his Honor ignored that paragraph of the lien law which provides that an agreement in writing shall be entered into before such advances are made, to this effect, in which shall be specified the amount to be advanced or in which a limit shall be fixed, beyond which the advances, if made from time to time during the year, shall not go, but took into consideration all the advances made, including some not covered by the lien.

"6th. His Honor having held that the evidence was undisputed and only a legal question is involved, erred in considering the question of subrogation, which he must have done in connection with the check given Ammons for the payment of rent, and which alone could have reduced the payments below the amount of the lien. He should have held: 1st. That this being a law case and subrogation being of equitable origin, that the same could not be interposed. 2d. That it being a material plea must have been pleaded, and as it was not, could not be considered. 3d. That under the law a stranger who pays the debts of another is not subrogated to any of the rights of the original creditor unless by special agreement, which in this case does not appear. 4th. That the lien law being statutory, that subrogation, even if admissible, would create no lien, but would only give the right of action, and that an assignment of the landlord's lien in writing would alone convey to a third party the landlord's rights under the lien law. He should have further held that the check to Ammons, with an entry in the plaintiff's books for payment of rent, was an advance to Ammons, and if in excess of the lien was not covered by the lien.

"7th. His Honor having held that the evidence was undisputed and only a legal question is in issue, and also that there is something due under the bill of sale, expresses a legal conclusion, which was influenced by the plaintiff's 7th exception, reading as follows: 'It was the duty of the magistrate to hold as a conclusion from the testimony that the bill of sale was

intended to secure the old debt, which in law the agricultural
lien could not, and as collateral security to the lien debt which
secured the advances made in 1898, is error.   He should
have held that if the plaintiff represented to the defendant
that the lien would secure the old debt, and expressed that
representation in the lien by including the old debt as ad-
vances, then he would be estopped to assert the contrary for
his own benefit, as it would be allowing him to take advan-
tage of his own fraud.   He should have further held, as a
conclusion from the evidence, that the lien was given to
secure advances for agricultural purposes for the year 1898
for the sum of $380.65, and that the bill of sale was in fact
a mortgage given to secure the payment of the sum of
$380.65, and as collateral thereto, and that it made no differ-
ence whether the advances of the year preceding were in-
cluded, that upon the payment of the sum of $380.65, from
the proceeds of the crop upon which the lien existed or the
personal property mortgaged, the lien was extinguished and
the collateral ceased to have legal effect, and that the conclu-
sion to be deducted from the testimony showed that the lien
account had been fully paid from the two sources.

"8th. That his Honor erred in reversing the magistrate
and in giving judgment for the plaintiff.   He should have
affirmed the magistrate, there being no dispute as to the facts
and the magistrate having correctly applied those facts to
the law."

*Mr. W. F. Clayton,* for appellant

*Messrs. Wilcox & Wilcox,* contra.

April 1, 1902.   The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE McIVER.   The plaintiff brought this
action of claim and delivery to recover the possession of
certain personal property, covered by a bill of sale, bearing
date 17th of March, 1898, executed by the defendant to the

plaintiff's firm, "in consideration of the sum of $380.65 to me advanced in money and supplies by P. I. Bostick & Co.," which property the defendant promised to deliver on demand of the said P. I. Bostick & Co.  The case was originally instituted in a magistrate's court, and upon the trial there the testimony which is set out in the "Case" was taken. From that testimony it appears that on the 17th of March, 1898, the defendant not only executed the bill of sale above referred to, but also an agricultural lien, whereby the plaintiff agreed to advance and furnish to the said B. T. Ammons, supplies to the amount of not exceeding $380.65, to enable him to make his crop for that year, on certain land rented from one Belin.  It also there appears that the amount of defendant's indebtedness to the plaintiff at the end of the year 1898, was $571.52, made up as follows: Balance due in 1897, $147.40; amount advanced defendant to pay rent, $125.00; amount advanced for supplies for year 1898, $299.12—$571.52.  Upon the amount thus due the testimony shows that the proceeds of the crop for the year *1898* was applied to the advances for that year, $299.12; and on account of the rent advanced, *$82.27—$381.39.*  This would leave the following amounts still due by the defendant to the plaintiff: Balance for year 1897, $147.40; amount of rent for 1898 still unpaid, $42.73—$190.13.  From which deduct sale of horse to Timmons, $45.00.  Leaving as the balance still due plaintiff, $145.13.  The magistrate seems, however, to have taken a different view of the testimony, or rather as to how the payments should be applied, and found in favor of the defendant, that there was nothing due by defendant *under the bill of sale,* though we do not understand him to deny that there was anything due the plaintiff by the defendant on any other account, and rendered judgment in favor of defendant.  From this judgment plaintiff appealed to the Circuit Court, where the judgment of the magistrate was reversed, and judgment was rendered in favor of plaintiff.

From this judgment defendant appeals to this Court upon

20—63

the several grounds set out in the record, which will be incorporated in the report of this case by the Reporter, as we find it difficult to understand what specific error of law is pointed out in any of the exceptions. As well as we can understand, both the magistrate and the counsel for appellant seem to be laboring under the impression that the only evidence of indebtedness on the part of the defendant to the plaintiff was the agricultural lien, and that the bill of sale was merely collateral security for the payment of such indebtedness as could be properly secured by such lien; and, therefore, when such indebtedness was paid, the bill of sale had accomplished its purpose as collateral security, and was no longer available for any purpose. In the light of the undisputed testimony in this case, such a view is entirely at variance with the intention of the parties and is wholly untenable. There can be no doubt that both parties recognized that there was a balance of $147.40 due to the plaintiff by the defendant as the result of the transactions of the previous year; and there is as little doubt that both parties intended to secure such balance along with other advances for the year 1898, both by the agricultural lien and by the bill of sale. The fact that such a claim could not be legally secured by the agricultural lien, certainly could not impair the security afforded by the bill of sale in the nature of a mortgage. True, the bill of sale was spoken of by the witnesses as "collateral security" for the agricultural lien, but if the principal should from any cause prove insufficient to afford the protection intended, that is no reason why the collateral cannot be looked to for such protection. Indeed, the very object in taking collateral security is to supplement the principal security if needed. Both the magistrate and the counsel for appellant seem to have overlooked the distinction between a debt which was *intended* to be secured, and one that was *actually* or *legally* secured; and they seem to infer that the old debt, arising out of the previous year's operations, though undoubtedly *intended* to be secured both by the agricultural lien and the bill of sale, was not, in fact,

secured by either; because, under the law, such a debt could not be secured by an agricultural lien; and if the bill of sale was merely collateral security for the debt secured by the agricultural lien, it could not afford any security for a debt which was not, and could not, be protected by an agricultural lien. Such a mode of reasoning may be ingenious, but it is not sound, and will not receive the sanction of this Court.

The point made by the 6th exception as to the doctrine of subrogation is not well taken. We do not understand this to be a case of subrogation at all. On the contrary, the plaintiff advanced to the defendant the money necessary to pay the rent of the land, and charged it as one of the advances made during the year; and whether such advance was protected by the agricultural lien or not, is a matter of no consequence, as it was protected by the bill of sale.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.